UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ANTHONY FRANKLIN, | § | |
| | § | |
| **Plaintiff,** | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| MICHAEL J. ASTRUE, | § | SA-07-CV-0148 OG (NN) |
| **Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

MEMORANDUM AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO:   **Honorable Orlando Garcia**
      **United States District Judge**

### Introduction

Plaintiff Anthony Frankilin brought this action for judicial review of the final decision of

the Commissioner of the Social Security Administration (the Commissioner), determining that

Franklin is not disabled for the purposes of the Social Security Act (the Act) and denying

Franklin's applications for Disability Income Benefits (DIB) and Supplemental Social Security

Insurance (SSI) benefits.  Franklin asks the district court to reverse the Commissioner's decision

and to render judgment in his favor.  In the alternative, Franklin asks the district court to reverse

the decision and remand the case for further proceedings.

After considering Franklin's brief in support of his complaint,[1] the brief in support of the

---

[1]Docket entry # 16.

Commissioner's decision,[2] Franklin's reply brief,[3] the record of the SSA proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this memorandum and recommendation under 28 U.S.C. § 636(b) and this district's general order, dated July 17, 1981, referring for disposition by recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the plaintiff's application for benefits.[4]

## Jurisdiction

The district court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

## Administrative Proceedings

Based on the record in this case, Franklin exhausted his administrative remedies prior to filing this action in federal court.  Franklin applied for DIB and SSI benefits on April 5, 2004 and April 15, 2004, respectively, alleging disability beginning April 26, 2001.[5]  The Commissioner denied the applications initially and on reconsideration.[6]  Franklin then asked for a hearing before

---

[2]Docket entry # 17.

[3]Docket entry # 20.

[4]*See* Local Rules for the Western District of Texas, appx. C, p. 10.

[5]SSA record, pp. 87 (application for DIB) & 4 (indication that application for SSI isn't available).

[6]*Id*. at pp. 23-4, 30 & 38.

2

an ALJ.[7]  A hearing was held on October 3, 2005.[8]  The ALJ issued a decision on August 2, 2006,

concluding that Franklin is not disabled within the meaning of the Act.[9]  Franklin asked for review

of the decision.[10]  The Appeals Council denied the request for review on December 15, 2006 after

determining that no basis existed for reviewing the ALJ's decision.[11]  The ALJ's decision became

the final decision of the Commissioner for the purpose of the district court's review pursuant to

42 U.S.C. § 405(g).  Franklin filed this action seeking review of the Commissioner's decision on

February 26, 2007.[12]

### Issue Presented

> Is the ALJ's decision that Franklin is not under a "disability," as
> defined by the Act, supported by substantial evidence and does the
> decision comport with relevant legal standards?

### Analysis

**A. Standard of Review**

In reviewing the Commissioner's decision denying disability benefits, the reviewing court

is limited to determining whether substantial evidence supports the decision and whether the

Commissioner applied the proper legal standards in evaluating the evidence.[13]  "Substantial

---

[7]*Id*. at p. 45.

[8]*Id*. at pp. 419-49.

[9]*Id*. at pp. 14-21.

[10]*Id*. at p. 8.

[11]*Id*. at p. 5.

[12]Docket entry # 3.

[13]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

3

evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[14]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[15]

　　If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[16]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[17]  Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[18]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[19]

---

[14]*Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[15]*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[16]*Martinez*, 64 F.3d at 173.

[17]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[18]*Martinez*, 64 F.3d at 174.

[19]*Id.*

4

### 1. Entitlement to Benefits

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive benefits.[20]  The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[21]  A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[22]

### 2. Evaluation Process and Burden of Proof

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[23]  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[24]

The first step involves determining whether the claimant is currently engaged in substantial

---

[20]42 U.S.C. § 1382(a)(1) & (2).

[21]42 U.S.C. § 1382c(a)(3)(A).

[22]42 U.S.C. § 1382c(a)(3)(B).

[23]20 C.F.R. §§ 404.1520 and 416.920.

[24]*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

gainful activity.[25]  If so, the claimant will be found not disabled regardless of his medical condition or his age, education, or work experience.[26]  The second step involves determining whether the claimant's impairment is severe.[27]  If it is not severe, the claimant is deemed not disabled.[28]  In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[29]  If it meets or equals a listed impairment, the claimant is deemed disabled without considering his age, education, or work experience.[30]  If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity and the demands of his past work.[31]  If the claimant is still able to do his past work, the claimant is not disabled.[32]  If the claimant cannot perform his past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given his residual capacities, age, education, and work experience, to do other work.[33]  If the claimant cannot do other work, he will be found disabled.  The claimant bears the burden of proof at the first four steps of the sequential analysis.[34]

---

[25]20 C.F.R. §§ 404.1520 and 416.920.

[26]*Id.*

[27]*Id.*

[28]*Id.*

[29]*Id.*

[30]*Id.*

[31]*Id.*

[32]*Id.*

[33]*Id.*

[34]*Leggett*, 67 F.3d at 564.

Once the claimant has shown that he is unable to perform his previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account his exertional and nonexertional limitations, able to maintain for a significant period of time.[35]  If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he is unable to perform the alternative work.[36]

## B. Findings and Conclusions of the ALJ

In the instant case, the ALJ reached his decision at step five of the evaluation process.  At step one, the ALJ determined that although Franklin had engaged in substantial gainful activity since his alleged onset date, he was not engaged in substantial gainful activity at the time of his hearing.[37]  At step two, the ALJ determined that Franklin has the following combination of severe impairments: coronary artery disease, status post left anterior descending stent, status post left shoulder surgery, status post right knee surgery, chronic obstructive pulmonary disease, hypertension, diabetes mellitus and obesity.[38]  At step three, the ALJ determined that Franklin does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1 (Appendix 1).[39]  At step four, the ALJ determined that Franklin has the following residual functional capacity: Franklin can

---

[35]*Watson  v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[36]*Anderson v. Sullivan*, 887 F.2d 630, 632-3 (5th Cir. 1989).

[37]SSA record, p. 16.

[38]*Id.*

[39]*Id.*

lift and carry a maximum of 10 pounds occasionally and 5 pounds frequently; he can stand and walk for about 2 hours in an 8-hour workday; he can sit for about 6 hours in an 8-hour workday; Franklin cannot climb ramps, stairs, ladders, ropes or scaffolds; Franklin cannot do work that includes balancing, stooping, kneeling, crouching and crawling; Franklin can occasionally reach other than overhead with left non-dominant upper extremity, but he cannot do any overhead reaching with the left non-dominant upper extremity; and Franklin has no restrictions with the right dominant upper extremity.[40]  The ALJ determined that Franklin is limited to work settings that do not have concentrated exposure to fumes, odors, dusts, gases and poor ventilation; and that Franklin should not be exposed to extreme cold, heat, wetness, and humidity.[41]  After reviewing the medical evidence and giving Franklin "all benefit of the doubt,"[42] the ALJ concluded that Franklin is capable of performing a limited range of sedentary work.[43]  Because Franklin had previously worked at medium-level exertional work, the ALJ determined that Franklin can no longer perform his past relevant work.[44]  The ALJ consulted with a vocational expert and determined that jobs exist in significant numbers in the national economy that Franklin can perform.[45]  The ALJ concluded that Franklin is not disabled.[46]

---

[40]*Id.*

[41]*Id.*

[42]*Id.* at p. 19.

[43]*Id.*

[44]*Id.* at p. 20.

[45]*Id.* at pp. 20-1.

[46]*Id.* at p. 21.

## C.  Franklin Allegations of Error

Whether the ALJ failed to properly consider Franklin's combination of impairments.
Franklin maintains that the ALJ's conclusion that he is not disabled is not supported by substantial evidence because the ALJ failed to properly consider the combination of his impairments. Franklin argues that the ALJ did not consider the effect of his sleep apnea, his diastolic heart failure and accompanying limitations.[47]  He also complains that the ALJ mis-characterized the nature of his shoulder injury.  Franklin contends that despite having two shoulder surgeries, the ALJ did not recognize that he had undergone the surgeries.

The latter complaint is easily explained—the ALJ's opinion contains a typographical error. The opinion contains the following two statements:  "In summary, the medical evidence shows that the claimant did *not* undergo surgery for the alleged impairment of left shoulder and right knee pain.  However, there is evidence indicating that conservative treatment and the surgeries were successful in relieving his symptoms."[48]  Franklin relies on the first statement to support his position that the ALJ did not properly consider the opinion of his treating physician.  As the following discussion shows, the first statement contains a typographical error.  Even though the statement says that Franklin did not undergo surgery, the ALJ's discussion of the evidence makes it clear that the ALJ recognized that Franklin has undergone surgery on his left shoulder and right knee.

Franklin's alleged onset date is based on the day he fell from a tractor onto his left shoulder.  Dr. Brian L. Sullivan—an orthopaedist—treated Franklin for the resulting shoulder

---

[47]Docket entry # 16, pp. 4-6.

[48]SSA record, p. 18 (emphasis added).

injury.  After reviewing an MRI of Franklin's shoulder, Dr. Franklin opined that the shoulder

looked good.[49]  He explained that Franklin's shoulder had only a little subchondral cyst.[50]  Dr.

Sullivan prescribed a pain-killer and sent Franklin to physical therapy.  Five weeks after Franklin's

fall, Dr. Sullivan opined that Franklin complained about pain that was out of proportion to what

he would expect from such an injury and he referred Franklin to Dr. J. Lowell Haro—a pain

management specialist—to get Franklin's pain under control so he could get Franklin get into

physical therapy.[51]

Dr. Haro treated Franklin with trigger point[52] injections and electrical stimulation.[53]  Five

months after Franklin's fall, Dr. Haro reported to Dr. Sullivan that "[i]t did not appear that we are

making much progress with his rehabilitation" and referred Franklin back to Dr. Sullivan for other

ideas about Franklin's treatment.[54]  When Franklin returned to Dr. Sullivan, Dr. Sullivan opined

that Franklin did not strike him as being in pain.[55]  Dr. Sullivan wrote that Franklin seemed to

have pain far out of proportion to any objective physical findings and advised Franklin that he had

---

[49]*Id*. at p. 294.

[50]*Id*.  A subchondral cyst is a cyst "[s]ituated beneath cartilage or gristle."  J.E. SCHMIDT, M.D., ATTORNEY DICTIONARY OF MED. S-7242 (Matthew Bender 2005).

[51]SSA record, p. 294.

[52]The term "trigger point" refers to a "point or region of the body the touching of which initiates an attack of pain elsewhere."  J.E. SCHMIDT, M.D., ATTORNEY DICTIONARY OF MED. TH-TY-664 (Matthew Bender 2005).

[53]SSA record, at p. 298.

[54]*Id*.

[55]*Id*. at p. 292.

nothing to offer from a surgical standpoint.[56]  Dr. Sullivan ultimately referred Franklin to Dr.

Stephen M. Pearce for a second opinion.[57]

Dr. Pearce observed that a prior MRI of Franklin's shoulder indicated that Franklin's left-

shoulder rotator cuff sensory looked intact and showed a small supracondylar cyst near the

attachment of the rotator cuff.[58]  He also observed that a more recent MRI indicated significant

changes in the acromioclavicular (AC) joint consistent with traumatic arthritis and that the distal

clavicle was very irregular and enlarged.[59]  Based on these observations, Dr. Pearce recommended

an injection into the AC joint.[60]  Eight months after his fall, Franklin continued to complain about

pain, so Dr. Pearce offered Franklin a distal clavicle resection.[61]  Franklin underwent the

procedure on January 9, 2002.  During the procedure, Dr. Pearce found that the rotator cuff was

intact.[62]  Franklin though continued to complain about pain.[63]  Dr. Pearce attempted to alleviate

Franklin's pain with additional injections into the AC joint and additional physical therapy.  When

the injections and physical therapy failed to provide relief,[64] Dr. Pearce performed a second

---

[56]*Id.*

[57]*Id.* at p. 280.

[58]*Id.*

[59]*Id.*

[60]*Id.*

[61]*Id.* at p. 281.

[62]*Id.* at p. 291.

[63]*Id.* at p. 282-4.

[64]*Id.* at p. 282-3.

surgery on May 15, 2002—this time, an open distal clavicle resection.[65]  After the surgery, Dr.

Pearce referred Franklin to Dr. Eduardo R. Elizondo for rehabilitation.[66]  Dr. Pearce followed

Franklin's progress for a few more months, observing on December 23, 2002 that a MR

arthrogram[67] of Franklin's shoulder was normal.[68]

Dr. Elizondo opined that Franklin had a small degenerative tear in his left shoulder and

recommended reconstructive injections to promote tissue healing in the areas generating pain.[69]

Franklin's workers compensation carrier disapproved coverage for the treatment.[70]  On February

25, 2004, Dr. Elizondo observed that Franklin had a limited range of motion in abduction, flexion,

extension, external rotation and internal rotation.[71]  Dr. Elizondo recommended infiltration

brisement about the subacromial area of the shoulder to break the pain cycle and to help expand

the structures in the subacromial space.[72]  Dr. Elizondo performed two such procedures on

Franklin's shoulder.  Dr. Elizondo's note documenting the second infiltration brisement is the last

treatment note about Franklin's shoulder.[73]

------

[65]*Id*. at p. 288.

[66]*Id*. at p. 285.

[67]A arthrogram is an "x-ray picture of a joint after injection of air or radiopaque material into the joint."  J.E. SCHMIDT, M.D., ATTORNEY DICTIONARY OF MED. A-10989 (Matthew Bender 2005).

[68]SSA record, at p. 286.

[69]*Id*. at pp. 238-9.

[70]*Id*. at pp. 241-2.

[71]*Id.* at p. 242.

[72]*Id*.

[73]*Id*. at p. 244.

The ALJ referred to each of these procedures in his opinion. To say that the ALJ erred by disregarding the surgeries is simply incorrect. The ALJ specifically discussed the surgeries, but made a typographical error in his opinion. Read in the context of the ALJ's discussion of the evidence, it is clear that the ALJ intended to write the following: "In summary, the medical evidence shows that the claimant *did* undergo surgery for the alleged impairment of left shoulder pain. However, there is evidence indicating that conservative treatment and the surgeries were successful in relieving his symptoms."

The same analysis applies to the ALJ's consideration of the surgery on Franklin's right knee. Franklin complained about his right knee beginning on May 08, 2005, when he went to a hospital emergency room.[74] A couple of weeks later, Franklin returned to Dr. Sullivan, complaining about knee pain.[75] Although Xrays were unremarkable, an MRI of Franklin's right knee revealed tears in the medial and lateral menisci.[76] Dr. Sullivan repaired the tears during arthroscopic surgery on September 1, 2005.[77] Notes of that procedure are the last treatment notes for Franklin's knee.

The ALJ's opinion specifically mentions the surgery on Franklin's right knee. Th ALJ's discussion about the right-knee surgery shows that the ALJ recognized that Franklin had surgery on his knee and that the ALJ made a typographical error. The ALJ's discussion about the evidence of Franklin's right knee shows that the ALJ intended to write the following: "In

---

[74]*See id.* at p. 326.

[75]*Id.*

[76]*Id.* at p. 327.

[77]*Id.* at p. 321.

summary, the medical evidence shows that the claimant *did* undergo surgery for the alleged impairment of right knee pain.  However, there is evidence indicating that conservative treatment and the surgeries were successful in relieving his symptoms."

As for Franklin's complaint that the ALJ did not consider the effect of sleep apnea[78] on his combined impairments, the ALJ is not required to consider the effect of non-severe impairments. Step two of the disability determination process requires the ALJ to consider the medical severity of a claimant's impairments.[79]  If the ALJ finds that a claimant has a severe medically determinable physical or mental impairment, the ALJ must proceed to step three.  If the ALJ finds that an impairment is not severe, the ALJ will find that the claimant is not disabled.[80] An impairment or combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities.[81]

No evidence indicates that sleep apnea significantly limits Franklin's physical or mental ability to do basic work activities.  Franklin underwent a sleep study in June 2004.[82]  As a result of the study, Dr. Desmar Walkes recommended that Franklin use a continuous positive airway pressure (CPAP) machine at home.  A CPAP machine delivers a stream of compressed air to the

---

[78]Sleep apnea is "[a]n abnormal condition marked by repeated stops in breathing during sleep that last long enough to cause an oxygen deficiency in the blood.  The breathing cessation, lasting 10 or more seconds each time, may recur 30 or more times a night."  J.E. SCHMIDT, M.D., ATTORNEY DICTIONARY OF MED. S-3869 (Matthew Bender 2005).

[79]*See* 20 C.F.R. § 404.1520(a)(4)(ii).

[80]*See* 20 C.F.R. § 404.1520(a)(4)(ii).

[81]20 C.F.R. § 404.1521(a).

[82]SSA record, pp. 310-1.

user "via a hose to a nasal pillow, nose mask or full-face mask, splinting the airway (keeping it open under air pressure) so that unobstructed breathing becomes possible, reducing and/or preventing apneas and hypopneas."[83]  Franklin obtained the machine and has used it faithfully.[84] Dr. Ted Wallis—Franklin's pulmonologist—reported on February 8, 2005 that Franklin denied daytime sleepiness and opined that Franklin's sleep apena was controlled by CPAP.[85]  Dr. Wallis made a similar observation on March 8, 2005, writing that Franklin's sleep apnea is well-controlled.[86]  Franklin's medical records from that point forward do not mention sleep apnea. Instead of indicating that sleep apnea significantly limits Franklin's physical or mental ability to do basic work activities, Dr. Wallis's observation that Franklin's sleep apnea is well-controlled indicates that sleep apnea does not significantly limit Franklin's physical or mental ability to do basic work activities.  In the absence of a significant limitation, Franklin's sleep apnea does not constitute a severe impairment and the ALJ was not required to consider the impairment.[87]

As for Franklin's diastolic heart failure, the evidence in the record does not reflect that diastolic dysfunction significantly affects Franklin's ability to work requiring the ALJ to include diastolic dysfunction in his consideration of severe impairments.  Diastolic dysfunction is a "condition of the heart in which [the heart] does not expand enough during the relaxation period

---

[83]*See* Wikipedia, The Free Encyclopedia, *available at* http://en.wikipedia.org/wiki/Continuous_positive_airway_pressure.

[84]*See* SSA record, p. 314.

[85]*Id*.

[86]*Id*. at p. 313.

[87]During his hearing, Franklin testified that he sleeps well when he uses his CPAP machine.  *Id*. at p. 425.

(the diastole).  When this occurs, the heart does not pump out the normal amount of blood when it contracts (during systole)."[88]  Dr. Tucker first diagnosed Franklin's diastolic dysfunction in May 2004 when he performed a cardiac catheterization.[89]  "Cardiac catheterization involves passing a catheter (a thin flexible tube) into the right or left side of the heart.  In general, this procedure is performed to obtain diagnostic information about the heart or its blood vessels or to provide treatment in certain types of heart conditions."[90]  Dr. Tucker recorded his final impression of the procedure as mild diastolic dysfunction.[91]  Dr. Tucker performed another cardiac catheterization on June 18, 2004 and recorded the same final impression—mild diastolic dysfunction.[92]  Dr. Tucker's characterization of Franklin's condition as mild indicates that diastolic dysfunction does not significantly limit Franklin's physical or mental ability to do basic work activities—that is, it is a non-severe impairment.  As a non-severe impairment, the ALJ was not required to consider diastolic dysfunction.  Nevertheless, the ALJ discussed the results of Franklin's most recent cardiac catheterization, observing that the procedure showed the Franklin has mild pulmonary hypertension, most likely on the basis of obesity and diastolic dysfunction.[93]  The ALJ did not err in considering the combination of Franklin's impairments.

----

[88]J.E. Schmidt, M.D., Attorney Dictionary of Med. D-2529 (Matthew Bender 2005).

[89]See SSA record, pp. 268-70.

[90]Medline Plus Trusted Info. for You, a service of the U.S. Nat'l Library of Medicine and the Nat'l Inst. of Health, *available at* http://www.nlm.nih.gov/medlineplus/ency/article/003419. htm#Definition.

[91]SSA record, p. 270.

[92]See id. at pp.248-50.  See also id. at p. 246.

[93]See id. at p. 18.

Whether the ALJ properly considered Franklin's subjective complaints of disabling pain.

Franklin maintains that the ALJ improperly discounted his complaints about pain[94] by failing to weigh the medical evidence and failing to articulate reasons for the credibility assessment.[95]  When a claimant complains about symptoms such as pain, fatigue, shortness of breath, weakness, or nervousness, the SSA's regulations require the ALJ to first determine whether "an underlying medically determinable physical or mental impairment(s) [exists] . . . that could reasonably be expected to produce the individual's pain. . . ."[96]  Here, the ALJ recognized that Franklin's medical impairments can cause pain.[97]  If the ALJ finds that an impairment exists that could reasonably be expected to produce pain, the ALJ must then "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities."[98]  In this case, the ALJ evaluated the medical evidence and determined that no medical evidence supports Franklin's statements about the intensity, duration and limiting effects of his pain.[99]  The ALJ's comparison of Franklin's testimony about why he cannot work with the medical evidence shows that the ALJ weighed the medical evidence.  The ALJ compared Franklin's testimony that he cannot work because of his

---

[94]Docket entry #16, p. 7.

[95]*See id.* at p. 8.

[96]Social Security Reg. 96-7p, *available* at www.ssa.gov.

[97]SSA record, p. 17 (finding that the claimant has an objectively identifiable medical impairment that could cause the symptoms of which the claimant complains).

[98]Social Security Reg. 96-7p, *available* at www.ssa.gov.

[99]SSA record, p. 17.

shoulder injury[100] with the medical evidence about that injury,[101] Franklin's testimony that he

cannot stand because of bad knees[102] with the medical evidence about Franklin's right knee,[103]

Franklin's testimony that he has stents in his heart[104] with the medical evidence about Franklin's

heart condition,[105] Franklin's testimony that he has problems with breathing[106] with medical

evidence about Franklin's exertional dyspnea (shortness of breath),[107] and Franklin's testimony

about poor vision due to diabetes[108] with medical evidence about Franklin's diabetes.[109]  In each

comparison, the ALJ provided a reason why Franklin's statements were not entirely credible.

This consideration—comparing Franklin's allegations with the medical evidence and articulating a

reason for the credibility assessment—shows that the ALJ did not improperly discount Franklin's

complaints about pain.  The ALJ made a proper credibility assessment.

     Whether the ALJ's hypothetical question to the vocational expert was flawed.  Franklin

contends the ALJ erred in questioning the vocational expert who testified at his trial because the

---

[100]*See id.* at pp. 419, 422 & 425-7.

[101]*Id.* at pp. 17-8.

[102]*Id.* at p. 419.

[103]*Id.* at p. 18.

[104]*Id.* at p. 421.

[105]*Id.* at p. 18.

[106]*Id.* at pp. 419, 429-30 & 432.

[107]*Id.* at p. 18.

[108]*Id.* at p. 419-20.

[109]*Id.* at p. 18.

ALJ did not ask the vocational expert about the impact of using a walker on Franklin's ability to work.[110]  A proper hypothetical question posed to a vocational expert must reasonably incorporate all of the disabilities recognized by the ALJ.[111]  During his hearing, Franklin testified that he used a walker to walk up and down his apartment for exercise and that he used the walker because he can't stand on his leg very much.[112]  He explained that he used the walker to go to the mailbox[113] and that he can sometimes walk two blocks with the walker.[114]  Despite this testimony, nothing in Franklin's medical record documents the need for a walker.  Without some objective medical evidence indicating the need for a walker, the ALJ was not required to question the vocational expert about the impact of a walker.

The ALJ posed a hypothetical question to the vocational expert that incorporated Franklin's impairments.  In questioning the vocational expert about the jobs a person with Franklin's impairments could perform, the ALJ included the following:[115] "same age, education, and work history as the claimant;" a residual functional capacity of "reduced range of sedentary,

---

[110]Docket entry # 16, p. 9.

[111]*See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994) ("Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand.").

[112]SSA record, p. 422.

[113]*Id.*

[114]*Id.* at p. 429.

[115]*See id.* at pp. 442-3.

with negligible on all six of the postural demands of climbing, balancing, stooping, kneeling,

crouching, crawling;" "manipulative limitations on reaching, with the non-dominant upper

extremity;" "no limitations with the dominant, or right hand, but on the non-dominant, left,

negligible overhead and no more than occasional reaching other than overhead with the left, the

non-dominant [upper extremity];"and "environmental limitations, negligible exposure to weather,

cold, hot, wet, humid environments, as well as fumes, odors, dusts, gases, poor ventilation."  This

hypothetical is a generous interpretation of the combination of Franklin's

severe impairments as neither of the residual functional capacity assessments in Franklin's record

document environmental limitations.[116]  The ALJ's hypothetical question was not flawed.

  <u>Whether substantial evidence supports the ALJ's determination that Franklin can perform</u>

<u>a range of sedentary work</u>.  Having addressed Franklins's allegations of error, the central inquiry

in this appeal is whether substantial evidence supports the ALJ's conclusion that Franklin is not

disabled.  Substantial evidence supports the ALJ's decision.  Although the residual functional

capacity assessments indicate that Franklin can lift and carry to a greater extent than determined

by the ALJ,[117] medical evidence supports the ALJ's determination that Franklin can occasionally

reach other than overhead with his left arm, but he cannot do any overhead reaching with that

arm.  On February 25, 2004, Dr. Elizondo reported that Franklin's left shoulder had a limited

---

[116]*See id.* at pp. 183 & 217.  The assessments also do not document postural limitations, but the assessments were prepared before Franklin reported problems with his right knee.

[117]*Compare id.* at p. 273 (assessment done on August 5, 2002, stating that Franklin can occasionally lift 50 pounds and frequently lift 25 pounds); p. 214 (assessment done on Nov. 10, 2004, reporting that Franklin can occasionally lift 50 pounds and frequently lift 25 pounds); & p. 180 (assessment done on Mar. 3. 2005, stating that Franklin can occasionally lift 50 pounds and frequently lift 25 pounds), *with id.* at p. 17 (determining that Franklin can lift and carry a maximum of 10 pounds occasionally and 5 pounds frequently).

range of motion in abduction, flexion, extension, external rotation, and internal rotation.[118]  On

September 21, 2004, Dr. Piyush Mittal evaluated Franklin and reported that Franklin has a

decreased range of motion in his left shoulder, abduction up to only 90 degrees.[119]  Dr. Mittal

stated that Franklin cannot take his left hand over his shoulder.[120]  He noted, however, that

adduction was normal, but flexion and extension were very painful.[121]  In addition to this medical

evidence, Franklin testified that he had worked for nine months during 2004 doing lawn

maintenance.[122]  This evidence constitutes substantial evidence supporting the ALJ's

determination that Franklin can occasionally reach other than overhead with his left arm, but he

cannot do any overhead reaching with that arm.  No evidence indicates that anything is wrong

with Franklin right arm—his dominant arm.

Although Franklin's medical record does not document any problems with his right knee

after his arthroscopic surgery on September 1, 2005 to correct a tear of the mid and posterior

one-third of the lateral meniscus, Franklin testified that he needs to sit with his knee stretched out

as far as he can[123] and Franklin's doctor has documented muscle atrophy in the left leg.[124]  This

evidence supports the ALJ's determination that Franklin cannot climb ramps, stairs, ladders, ropes

---

[118]*Id.* at p. 242.

[119]*Id.* at p. 230.

[120]*Id.*

[121]*Id.*

[122]*Id.* at p. 417.

[123]*Id.* at p. 419.

[124]*Id.* at pp. 397 & 400.

or scaffolds and that Franklin cannot do work that includes balancing, stooping, kneeling, crouching and crawling.

Medical evidence supports the ALJ's determination that Franklin can perform a limited range of sedentary work.  In the record of his last examination of Franklin, Dr. Tucker reported that Franklin's hypertension is controlled, Franklin has problems with exertional dyspnea, Franklin has no angina, and Franklin was negative for deep vein thrombosis (the formation of a blood clot in a deep vein) and pulmonary embolism (a blockage of the pulmonary artery).[125]  Dr. Tucker's evaluation is consistent with a sedentary range of work.

In addition to the evidence discussed above, the vocational expert's testimony supports the ALJ's step-five determination that substantial gainful employment exists in the economy that Franklin can perform.  The vocational expert testified that a person with Franklin's age, education, work history and residual functional capacity can perform the following sedentary jobs: charge account clerk, telephone quotation clerk and office clerk.[126]  As the evidence shows that Franklin can perform jobs that exist in the national economy, substantial evidence supports the ALJ's conclusion that Franklin is not disabled.

---

[125]*Id.* at p. 397.

[126]*Id.* at pp. 443-4.

<u>**Recommendation**</u>

Based on the foregoing, I recommend that Franklin's request for relief (docket entry # 3) be DENIED and that the Commissioner's decision denying Franklin benefits be AFFIRMED.

**VII. <u>Instructions for Service and Notice of Right to Object/Appeal</u>**

The United States District Clerk shall serve a copy of this memorandum and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this memorandum and recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the district court.[127]  **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the magistrate judge.** A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[128]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions

---

[127]28 U.S.C. §636(b)(1); FED. R. CIV. P. 72(b).

[128]*Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

accepted by the district court.[129]

SIGNED on February 6, 2008.

_Nancy Stein Nowak_
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[129]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).